## WINSHIP v. ENFIELD.

The plaintiff was a married woman when she received an injury from an alleged defect in a highway in the defendant town, but before suit was brought her husband died; upon the trial she is a competent witness.

The question as to the ability of a town to build and keep in repair a given highway, is to be considered by the proper tribunal, in laying out an original highway; but their finding upon that point is conclusive, and remains so until the highway is discontinued.

The question of the ability of the town to keep its highway in repair can not be raised and tried collaterally, in a suit against such town for damages for injuries received in consequence of a defect in its highways.

The statute makes towns responsible for keeping their highways in " good repair and suitable for the travel passing thereon." This rule is not to be varied according to the wealth or poverty of the town.

The inventory of the selectmen for a given year, or the amount of highway taxes assessed that year by any town, are not competent evidence to be received and considered, as affecting the liability of the town, in an action for damages for injuries received the same year, from a defect in a highway therein, and if received, such evidence would be likely to prejudice the jury.

Where the injuries sustained were caused in part from a defect in the highway, and in part from such accidents as could not have been prevented by ordinary care and prudence, the town will be liable.

In case for damages caused by alleged defects in a highway, if it appear that the vices of the horse or the defects in the carriage used by the plaintiff contributed to the injury received, the plaintiff, in order to recover, must not only show that he did not know, and had no reason to suppose that such vices or defects existed, but that he was in no fault in not knowing of their existence.

It is for the jury to find whether timber, wood, lumber, or other materials placed within the limits of a highway, by any person, are, under the circumstances, to be regarded as obstructions or incumbrances in such highway.

Lumber, wood, and other materials, when placed within the limits of a highway, in such a place or in such form or position as to be likely to frighten horses, may be an incumbrance to such highway, even though entirely out of the traveled track, and not upon any part of the road bed. But if it appear that the person placing or continuing such mate-

rials upon the highway was, at the time and in the performance of those acts, making such use of the highway as was, under all the circumstances of the case, necessary and proper, they would not then be an incumbrance.

Ordinarily, where incumbrances or obstructions have been placed in a highway by individuals, and any one receives injury in consequence, the town will be liable, in the first instance, to the injured party, and may have a remedy over upon the party causing the obstruction.

CASE for an injury to the plaintiff, by reason of defects in a highway, in November, 1858.

The plaintiff was a married woman at the time of the injury. After the injury, and before the bringing of the suit, her husband died. On the trial, she was offered as a witness and permitted to testify—the defendants objecting.

As tending to show that the road was not in a suitable state of repair, the plaintiff, in connection with evidence of the condition of the road, was permitted to prove the amount of the invoice of the town for the year 1858, and the amount appropriated in that year for highways—the defendants objecting.

The defendants introduced evidence tending to show that the horse used by the plaintiff had vicious habits, and that the wagon she used had defects, which were alleged to have contributed to the accident. The court charged the jury that if the injury suffered by the plaintiff was caused in part by the defective condition of the road, or by obstructions in it, and in part by the fault or negligence of the plaintiff, she could not recover. If she knowingly used a vicious horse or a defective wagon, and the vices of the horse, or the defects of the wagon contributed to the injury, she could not recover; but if she was guilty of no fault or negligence in this respect, and had no knowledge or reason to suppose that the horse had such vices, or the wagon had such defects, and the injury would not have occurred but for some defect or

obstruction of the road, the plaintiff might recover—to which the defendants objected.

The plaintiff's evidence tended to show that immediately before she passed the place of the accident, certain persons had thrown some wood from an adjoining lot over the fence into the limits of the highway, and near the traveled part of the same; that the horse was frightened by the wood, and caused to run, and that in passing over a water bar, which was made across the road near by, the plaintiff's wagon was overturned, and she was thrown out and injured. The defendants offered evidence tending to show that the wood had been thrown into the highway as aforesaid, by direction of the owner of the wood, who was also the owner of the adjoining land, for the purpose of drawing it away; that the wood was so situated that it was difficult to remove it in any other way, and it was most practicable and convenient to throw it into the highway, in order that it might be drawn off; that it had been within the limits of the highway but a few minutes when the plaintiff came by; and the defendants asked the court to charge that if the use of the road thus made by the owner of the wood was necessary and proper, under all the circumstances, the town was not liable, even though the jury should find that the horse was frightened at the wood, unless some other defect in the road, for which the town was chargeable, conduced to the accident.

The court did not so charge, but did instruct the jury, that if any person placed in the highway any lumber, wood, or other material, so as to be an incumbrance or obstruction therein, from which an injury had resulted to the plaintiff, the town was liable for the damage in the first instance, and the individual who placed such lumber, wood, or other material in the highway, was liable over to the town. It was for the jury to judge whether timber or other materials were, under the circumstances, to be regarded as incumbrances or obstructions in the highway;

and if in this case the wood was such, or so placed as to be likely to frighten horses, it might be properly regarded as an obstruction; and if damage resulted to any one from that cause, and the defective condition of the road in other respects, or from that cause alone, whoever might have placed the wood there, the town would be liable—to which the defendants excepted.

A verdict was rendered for the plaintiff, which the defendants moved might be set aside; and the questions were transferred.

*Hibbard* and *Murray*, for the defendants.

The invoice was inadmissible. Such evidence is only competent upon the question of laying out highways originally. *Dudley* v. *Cilley*, 5 N. H. 558.

Roads must be made and kept in a state of repair suitable for the amount and kind of travel for which they are to be used. This rule is uniform.

Proof of the amount appropriated for highways was inadmissible. The only question was as to the actual condition of the road, compared with what it ought to have been. This evidence was calculated to prejudice the jury; and the verdict, therefore, should be set aside. *Winkley* v. *Foye*, 28 N. H. 513; S. C., 33 N. H. 171.

If the vices of the horse or defects of the wagon contributed to the accident, the plaintiff can not recover, without regard to the question whether or not she had notice of such vices or defects. Where such vices or defects exist, and contribute to the accident, it is the fault of the plaintiff, and must preclude her from recovering. *Combs* v. *Topsham*, 38 Me. 204; *Moore* v. *Abbott*, 32 Me. 46; *Murdock* v. *Warwick*, 4 Gray 180; *Snow* v. *Adams*, 1 Cush. 443.

The court erred in not giving the instructions requested. *O'Linda* v. *Lothrop*, 21 Pick. 292; *Underwood* v. *Carney*, 1 Cush. 285; *Bigelow* v. *Webster*, 3 Pick. 268; *Johnson* v. *Haverhill*, 35 N. H. 74; *Hubbard* v. *Concord*, 35 N. H. 52.

*C. W. & E. D. Rand* and *Weeks*, for the plaintiff.

In *Johnson* v. *Haverhill*, 35 N. H. 82, "the ability and means of the town to improve" the highway in question, "and at the same time maintain the other highways with which they are burdened in suitable condition," are expressly insisted upon by the court as important for juries to consider. That case was like this, and was not a case where the question was about the propriety of laying out a highway. Again, in *Hubbard* v. *Concord*, 35 N. H. 65, the court say: "Whether a highway is or not in that suitable state of repair is a question for the jury, under the particular circumstances of each case; among which are the nature of the route, the character of the ground, the kind and amount of travel, and the ability and means of the town to improve it in the particular involved in the inquiry." The cases of *Johnson* v. *Haverhill* and *Hubbard* v. *Concord* were very carefully considered by the court, and it is not to be presumed that the principles established in them will be departed from. See *Graves* v. *Shattuck*, 35 N. H. 269.

It is contended by the defendants that, if the plaintiff had a vicious horse, and the vices of the horse contributed to the injury, she can not recover, although she was guilty of no fault or negligence in this respect, and had no knowledge or reason to suppose that the horse had such vices. We think the contrary doctrine ought to be considered settled in this state. *Norris* v. *Litchfield*, 35 N. H. 276.

In regard to the wood, the jury were instructed that "if in this case the wood was so placed as to be likely to frighten horses, it might be properly regarded as an obstruction." This is in accordance with the doctrine of *Howard* v. *North-Bridgewater*, 16 Pick. 189. In that case the court say: "There may be such obstructions out of the traveled path as will render the road unsafe; such, for instance, as would frighten horses." The other instructions

upon this point are correct beyond controversy. They are according to the reported decisions of this court. It would have been idle to have instructed the jury as requested by the defendants. Under the instructions given, the jury could not have regarded the wood as necessarily an obstruction. If the use of the road by the owner of the soil was "necessary and proper," the wood could not have been considered an obstruction. On the other hand, if the jury regarded the wood as an obstruction, they could not have considered the use of the road by the owner of the soil as necessary and proper.

SARGENT, J. The first point raised in this case is as to the competency of the plaintiff as a witness upon the trial; but, as the defendants do not insist upon this objection, nor allude to it in their argument, it is evident they do not rely upon it. There can be, however, no doubt as to the correctness of the ruling of the court upon this point. Her husband having died before the commencement of the suit, she can only recover for such injuries as she herself received, and she could be under no disability other than that of interest, which the statute has removed.

The plaintiff was allowed to prove the amount of the invoice of the town for the year 1858, the year when the alleged injuries were received, and, also, the amount appropriated for highways the same year, subject to exception, as tending to affect the liability of the town for the injury received by the plaintiff. We are not aware that these questions have ever been raised in any adjudicated case in this state.

The plaintiff relies on the cases of *Hubbard* v. *Concord*, 35 N. H. 52, and *Johnson* v. *Haverhill*, 35 N. H. 74; but an examination of those cases shows that no question was made in either of them upon the point here in controversy; nor was the same evidence, or any similar to it, offered in either of those cases, upon either side; nor was

the point alluded to by counsel upon either side in argument; nor was it necessary to be considered in deciding all the questions there raised.

These cases, however, contain certain *dicta* that undoubtedly justify the positions here taken by the plaintiff; but there could be no decision upon a point not raised by the facts in the case, nor considered in argument and presumptively not examined by the court; for it is not to be presumed that the court examined, considered and determined points not raised by the case, nor necessary to be considered in its determination. Nor are courts to be held responsible for the particular language used by the judge who delivers its opinion, in alluding to or discussing matters entirely foreign, or merely incidental to the question decided, and kindred topics not necessarily involved in the determination of the case before them. Much less will they feel themselves estopped by any such *dicta* from fully considering such questions when they may be legitimately raised and brought before them for determination.

We do not understand that the plaintiff relies upon any other authority save what is thus found in the expressions above referred to, unless it be a remark in the opinion of *Fowler*, J., in *Graves* v. *Shattuck*, 35 N. H. 269, where, in speaking of the powers and duties of towns, their liabilities in relation to the construction and repair of highways, and the rights of adjoining land owners, he says that these "are so well understood, and have been so recently considered and discussed in the cases of *Hubbard* v. *Concord*, 35 N. H. 52, and *Johnson* v. *Haverhill*, 35 N. H. 74, and in *Baker* v. *Shepard*, 24 N. H. 208, and *Blake* v. *Rich*, 34 N. H. 282, that it is hardly necessary or useful again to consider them." But it will be observed that, in the case thus under consideration, no question arose either upon the facts in the case, or upon any ruling of the court below, in any way similar to the one raised

in the case before us; nor was there any thing in that case to call the attention of the court at all to those expressions, on which the plaintiff relies, in *Hubbard* v. *Concord* and *Johnson* v. *Haverhill.*

It will be observed that the same judge delivered the opinion in both these cases, and makes use of substantially the same expressions in both opinions, those expressions receiving the sanction of the whole court in the second case, which they could not receive in the first case, as that was in fact decided by a minority of the whole bench. But there was nothing in the second case to call the attention of the court to this particular subject — nothing that required any determination of the point here raised.

In *Hubbard* v. *Concord*, 35 N. H. 66, the remark relied on is, where, in speaking of the state of suitable repair in which the statute requires roads to be kept, and the circumstances to be considered by the jury in settling that question, *Sawyer,* J., says, that among such circumstances " are the nature of the route, the character of the ground, the kind and amount of travel, and the ability and means of the town to improve it in the particular involved in the inquiry." In *Johnson* v. *Haverhill* the same judge re-states the same position (on the eighty-second page of the same volume), where he mentions " the ability and means of the town to improve it, and at the same time maintain the other highways with which they are burdened, in suitable condition," as among the considerations which it is proper the jury should weigh in deciding whether the highway was at the time and place in suitable repair.

Now it is well understood that, in the original laying out of a highway, " the burden that is to be imposed upon the town or towns where the road is to be laid out, in making and keeping it in repair," is one of the questions to be considered in determining whether there is

occasion for laying out a highway for the accommodation of the public. *Dudley* v. *Cilley*, 5 N. H. 564.

But the determination of that question by the tribunal laying out the highway is final and conclusive, and the question can not be reviewed and reconsidered in every suit that may by possibility be brought against the town afterward for damages occasioned by the defects or want of repair of the same highway. Were it otherwise, the question might be for ever open, with any number of conflicting decisions, now settling that question one way, and the next trial the other way. If this question could be considered in this way, it would unavoidably lead to the most serious consequences; for, if the courts are to determine in a suit of this character the extent of repair and degree of perfection in which towns shall keep their roads, from a consideration of the wealth or poverty of such town, they will, also, be compelled to say, where a proper case of poverty shall be shown, that the town is not obliged to comply with the provisions of the statute at all which requires them to keep their highways "in good repair, and suitable for the travel passing thereon;" which would, in fact, practically reverse the judgment of the tribunal laying out the road, and that by indirection, in relieving towns from the liability imposed by the proper and legal tribunals, for the purpose of securing safety and convenience to the traveling public on all highways thus laid out by competent authority. This court will not in this way go behind the judgment of selectmen and county commissioners to inquire whether the burden of keeping highways in suitable repair is equally shared by all the towns in the state; whether in one case it is too heavy, and in another too light.

The judgment of the legally constituted tribunal for laying out public highways is and must be conclusive upon the question that such highway was properly laid out; which fact necessarily presupposes that the question

of the ability of the town, not only to build the highway, but to maintain and keep it in suitable repair, was considered and settled, and that judgment, like any other, is conclusive upon that question, and so remains as long as the road continues to be a public highway. Should the town, subsequent to such laying out, ever become so impoverished as to be unable to maintain its highways, there are abundant modes of relief, known to the law, to which such unfortunate town can have recourse. It might, perhaps, in an extreme case, be a good ground for discontinuance of the highway, on account of a change of circumstances since the same was laid out; or, if the highway could not well be dispensed with, then the law has made ample provision for their relief, by providing that "the court of common pleas, upon petition, may order any part of the expense of repairing any highway to be paid from the county treasury, in case they shall judge the expense of such repairs to be unjustly burdensome to such town, or in case the county convention shall be of opinion that any part of such expense should be paid by the county." Rev. Stat., ch. 55, sec. 18; Comp. Laws 147.

Care has also been taken to relieve poor towns, not only from the burden of repairing their highways, but also from the expense of laying out and constructing them where the necessities of the public shall seem to be greater than the ability of the town through which the highway is to pass. Pamph. Laws, 1850, ch. 958; Comp. Laws 141; Rev. Stat., ch. 52, sec. 8; Comp. Laws 143. The legislature has thus provided for the relief of any town that might otherwise be excessively burdened by the expense of laying out, constructing, or of maintaining and keeping in repair the roads which the public may need within the limits of such town. So there can be no occasion for the court to consider at all the question of

the ability of the town, in a suit for damages against such town for a defective highway.

The statute is peremptory, requiring towns to keep their roads in repair; and it also fixes its own rule for determining the standard of such state of repair. Towns are made liable to indictment and fine, among other things, for the following cause : " 5. If any town shall neglect to keep any highway therein in good repair, and suitable for the travel passing thereon." Rev. Stat., ch. 53, sec. 1; Comp. Laws 144. This is the only standard known to the law. The provision is, that "any town," large or small, rich or poor, may be indicted and fined, if they neglect to keep any highway therein in good repair. But what shall be the standard of judging whether the road is in good repair ? No road is, perhaps, absolutely perfect, and whether it is in good repair or not must depend upon the various considerations upon which it is proper to judge of it, upon the standard with which we are to compare it. If we are to consider the wealth or poverty of the town in which the road is located, we might say that a highway was in good repair in one town, which would be very defective in another of more wealth. But the legislature have not left the rule so uncertain and variable by which towns are to be tried. If the highway is suitable for the travel passing thereon, it is in good repair ; if not, it is not in good repair. But the legislature foresaw that there might be cases where to require some poor town to come up to this standard, would be too burdensome for them ; and hence, to prevent the necessity of the court being improperly called upon to interfere in such cases, ample provision has been made that such towns may be aided by the county to any extent, either by application to the court or the county convention.

There is no hardship, then, in holding that the presumption is, in every case, that the defendant town is of sufficient ability to keep its highways in good repair, and

Winship *v.* Enfield.

suitable for the travel passing thereon, and that this presumption, where the question is attempted to be raised collaterally, as in this case, must be conclusive. If the highway be obstructed, or incumbered, or defective, so that it is not suitable for the travel passing thereon, the wealth of the town can not make it any worse, or the poverty of the town any better. The standard by which the sufficiency of a highway is to be tested, is not to be expanded or contracted by the wealth or poverty of those upon whom the law, in the first instance, has imposed the obligation of maintaining and keeping it in repair. It was evidently not intended that it should be influenced by any considerations of this kind; but it is to be uniform in its application and impartial in its requirements, other things being equal, without regard to the wealth or poverty of the different towns.

If the wealth of the defendant town was one of the considerations necessary in determining the question of the sufficiency or insufficiency of a highway, in a suit of this kind, it might open an inquiry almost interminable, for the inventory of the selectmen can not be conclusive evidence of the wealth or poverty of any town; but the whole subject of means, resources, indebtedness and liability, of income and expenditure, would be open to investigation, and instead of the simple question, was the highway in a state of repair suitable for the travel passing thereon, as the legislature have made it, the jury would be obliged, first, in every case of this kind, to act as auditors upon the financial affairs and condition of the town. But from the whole current of legislation upon this subject, in this state, we can not conceive that it was ever intended that the decision of the real question in the case should ever be incumbered in any such way.

If the rule were as the plaintiff contends, then, in case of a great thoroughfare through different towns, where the kind and amount of travel and the use of the road

would be substantially the same in all, if one town were comparatively rich and the adjoining one poor, then the same highway might be found to be in good repair in the poorer town, and very defective in the more wealthy one, even though the actual state and condition of the highway might really be better in the latter town than in the former; and a party who might be injured in consequence of any alleged defect in the highway, would, by this rule, be entitled to recover damages of the wealthy town, when he must fail in his suit against the poorer one, although the defect in each town, and all other circumstances, should be precisely similar.

But, again, suppose these views taken by the plaintiff to be correct, and a town should be indicted for not keeping their highway in good repair. If the town can only show itself poor enough, it must operate as a valid and perfect defense, however unsuitable the road may in fact be for the travel passing thereon. We think if this were adopted as the law of this state, it would introduce, in state trials of this kind, a doctrine entirely new, and as unreasonable as new.

Should the public suffer because a town may be poorer than some other town, when such town can receive all the aid which they can show they need by merely asking for it? Is such poverty to be a perfect defense for the town, when indicted for not keeping their highway in a state of repair suitable for the public travel passing over it, when the legislature have expressly provided, that if such necessary repairs of the highway shall prove burdensome, the town may be relieved of this burden, upon application to the proper source, and the burden thrown upon the county, where, in such cases, it should belong — upon the whole public, for whose benefit the highway is required, especially after such town has, in the first instance, had an opportunity to be fully heard upon the subject of their poverty and the burdens already imposed

upon them, and all the other circumstances of the case, and when it has been decided by the proper authority that the public necessities and convenience require that the burden of making the same highway and keeping it in repair should be imposed on such town, notwithstanding their supposed poverty?

If the views of the plaintiff be correct, it is not easy to perceive any good reason why these several enactments have been passed for the relief of poor towns; for, if all the town is called upon to do, in a suit like the present, is to prove their poverty, in order to avoid paying damages, and, in cases of indictment, the same kind of proof shall constitute a perfect defense, or even a defense *pro tanto*, it might be difficult to see how the town would ever be in a way to be excessively burdened by keeping its highways in good repair. The only reasonable ground upon which this legislation could have been based, must have been the assumption that all towns, without regard to their wealth or poverty, are obliged, when a road is once laid out, to keep it in that state of repair which the statute prescribes; and that in judging whether the highway is in a condition to be suitable for the travel passing thereon, the comparative wealth or poverty of the town has nothing to do.

In *Horton* v. *Ipswich*, 12 Cush. 488, it is held that "it is no defense to an action for an injury, caused by a defect in a highway, that the town used ordinary care and diligence in repairing the road, if by such care the road was not made safe and convenient, but remained defective." Neither could it have been sufficient to have proved merely that the town did not use such care and diligence, because the highway, at the time and place, might have been, notwithstanding this, in proper repair.

The only question is, what was the condition of the road in fact? Was it suitable for the travel passing thereon? If it was, that is all that is required. If it was not, neither the fact that the town had used ordinary care

and diligence in repairing it, or that the town had done all they were able to do upon it, or any considerations of ability or inability, or of the exercise of any degree of care or prudence in regard to it, can change the condition of the road, or relieve the town from their liability.

The evidence which was introduced being thus seen to have been incompetent, the next question is, was it material, and, if not, was it directly calculated to prejudice the jury? Because the verdict will not be set aside merely for the introduction of immaterial evidence, though incompetent, unless the court can see that it was calculated to excite prejudices or raise false impressions, and thus mislead the jury. *Jewett* v. *Stevens*, 6 N. H. 80; *Machine Co.* v. *Walker*, 22 N. H. 466; *Winkley* v. *Foye*, 28 N. H. 518; S. C., 33 N. H. 171.

And here we may need to consider the two pieces of evidence introduced separately. The invoice was not offered by the defendants to show their poverty, but by the plaintiff, in order to show that the town was wealthy, or, at least, able to maintain and keep in good repair all its highways. Now, so far as this evidence had that tendency, it was only proving a state of facts in regard to the town, which, as we have seen, is to be presumed to exist in every case without proof. This evidence was, therefore, merely corroborative of a legal presumption; it was only proving to the jury by evidence a state of facts which they would have been bound by law to have presumed to exist; and we can not see that, by this evidence alone, the jury would have been likely to be misled or prejudiced.

But the other evidence, as to the amount appropriated by the defendant town that year for the repair of highways, would not be competent, upon the same ground upon which the invoice was introduced, to show the ability of the town. That must have been admitted with a view to show something in relation to the burdens imposed upon the town to repair their highways. Upon

that ground, the evidence offered might be competent, if the object had been legitimate; but even then it must, if considered alone, be very uncertain and unsatisfactory, because if the amount appropriated were large, while it might show the burden to which the town was thus subjected, it could have, alone, very little tendency to show that all the roads were actually kept in good repair that year; but as this evidence was also introduced by the plaintiff, for the purpose, of course, of showing how light the burdens of the town were, we may safely presume that the amount thus appropriated was considered as being very small, as compared with the means and ability of the town as shown by the invoice.

But the fact that a town should neglect or refuse to raise or appropriate any money in any given year, for the repair of highways, would not discharge them from their duty to keep their highways in good repair, or relieve them from any liability for damages caused by defects in the same. But when we consider that both these pieces of evidence were admitted, and, of course, the jury told it was proper that they should consider it as bearing upon the question before them, the invoice tending to show, as we may fairly presume, that the town was wealthy, and the amount of appropriation very small compared with their resources, we can hardly see how, taken together, they could fail to create a prejudice upon the minds of the jury against the town. If they thought that the town had appropriated an amount of money for the repair of highways, altogether disproportionate to their means, they may have been easily influenced to visit the town with some severity on account of their supposed failure to perform their duty in this respect. They may have looked rather at the remissness of the town, in not raising a sufficient amount of highway taxes, than to their having failed to keep this particular highway in good repair.

The jury were further instructed that "if the plaintiff

knowingly used a vicious horse, or a defective wagon, and the vices of the horse or the defects of the wagon contributed to the injury, she could not recover, but if she was guilty of no fault or negligence in this respect, and had no knowledge or reason to suppose that the horse had such vices, or the wagon such defects, and the injury would not have occurred but for some defect or obstruction of the road, the plaintiff might recover." The use of the words "in this respect," in the first part of those instructions, confines the fault or negligence of the plaintiff, there referred to, to the preceding statement, in relation to her *knowingly* using the horse with vices, &c.

Let us, therefore, analyze those instructions, and see what facts the jury must have found under them. (1) They must have found that the plaintiff was guilty of no fault or negligence in knowingly using a vicious horse or a defective wagon; (2) That she had no knowledge or reason to suppose that the horse had such vices, or the wagon such defects; (3) That the injury would not have occurred but for some defect or obstruction in the highway.

The second fact found by them includes the first, for if she had no knowledge or reason to suppose that the horse had such vices, or the wagon such defects, she could not be guilty of fault or negligence in *knowingly* using them thus. So that in fact all that the jury have here found, under these instructions, is simply that the plaintiff had no knowledge or reason to suppose that such vices or defects existed, and that the defects in the highway contributed to the injury.

But this is not sufficient. It must not only appear that the plaintiff had no knowledge of the existence of these vices or defects, but it must also appear that she was not in fault for not knowing them. *Clark* v. *Barrington*, 41 N. H. 44; *Tucker* v. *Henniker*, 41 N. H. 317. A traveler who uses a horse, harness and wagon, belonging to another, may be so well acquainted with it as to need to

make no inquiries or examination in regard to it.   But a man who should call at a stable and procure a strange horse and wagon, of which he knew nothing, should not be allowed to recover damage of the town, for injuries resulting from the vices of the horse, when he might, by a single inquiry of the owner, have learned the vice and been enabled, effectually, to guard against it, and thus have prevented the injury; or where, by the most superficial examination of the carriage, he could have seen the defect and had it remedied at once.   He should not be allowed recklessly to use any horse that might come to hand, however vicious, and, if injured, recover damages of the town upon the ground that he did not know those vices, when, by using ordinary care and prudence, he could have learned the facts and thus have prevented the injury.

If the plaintiff is in any fault he can not recover, and as this plaintiff may have been in fault in this particular, and yet, under the instructions given at the trial, may have recovered her verdict, the same must, for that cause, also, be set aside.

It is contended by the defendants that if the injury was occasioned in part by some unknown defect in the wagon, or vice in the horse, of which the plaintiff was, without any fault of hers, ignorant, the town is not liable, although the injury would not have been received but for the defect or obstruction in the highway, and cites *Combs* v. *Topsham,* 38 Me. 204; *More* v. *Abbott,* 32 Me. 46; *Snow* v. *Adams,* 1 Cush. 443; *Murdock* v. *Warwick,* 4 Gray 180, which would seem to favor that position.   But it is not sustained by the weight of authority in this state, nor, as it is believed, by sound reason.   To establish such a rule would be going very far toward saying that where the team is perfectly manageable and under control, and obstructions and defects can, with ease, be avoided, and the vehicle preserved from shock or strain, the town is liable;

but that where danger begins, the liability of the town ceases.

The greatest precaution and the most penetrating foresight can not prevent casualties by the safest modes of conveyance. Accidents will occur. A nut, or a bolt, may drop, a trace may become disengaged, or the horse take fright and become unmanageable; and it is under circumstances like these, when life and limb are imperiled, that the traveler, who is in no fault himself, is entitled, if ever, to the benefit of a sufficient and unincumbered highway. The injuries are few that are received upon highways, however defective, that are not induced, in a greater or less degree, by some previously unknown defect, either in the carriage or harness, or by fright of the horse, or some similar cause, usually termed accidental; and to say that, under circumstances of danger and peril, from these and other accidental causes, the traveler is not entitled to the safety that a highway, unincumbered and without defects, that is, a highway made reasonably safe against the occurrence of such accidents as these, would afford at a time when, of all others, he has the greatest need, would seem to be repugnant to reason and common sense.

Where the plaintiff is in no fault, but the injury is the combined result of accident, and of the defendants' neglect to repair the road, the town must be held liable. So, where the vices of the horse, or the defects in the wagon, may have contributed to the injury, if there was, also, fault on the part of the town, that contributed to the same result, the defendants will be held liable, provided the plaintiff was without fault.

This view is not only supported by reason, but by abundant authority. "It is not questioned that towns are liable where the damage sustained arises in part from defects of the road, and in part from such accidents as could not be prevented by ordinary care and prudence." *Norris* v. *Litchfield,* 35 N. H. 276; *Clark* v. *Barrington,*

*ante; Howard* v. *North-Bridgewater,* 16 Pick. 189; *Palmer* v. *Andover,* 2 Cush. 600; *Bigelow* v. *Rutland,* 4 Cush. 247; *Hunt* v. *Pownal,* 9 Vt. 411; *Kelsea* v. *Glover,* 15 Vt. 711; *Allen* v. *Hancock,* 16 Vt. 230.

We think the instructions asked for in relation to the wood by the defendants, should have been given, and with this qualification and limitation we see no reason why the instructions that were given were not well enough.

*Rockwood* v. *Miller,* 11 Cush. 221, though not a case like the present, has some analogies. There it was said that " nothing is better settled than that if one do a lawful act upon his own premises he can not be held responsible for injurious consequences that may result from it, unless it was done so as to constitute actionable negligence;" and see cases there cited.

If the owner of the wood had been drawing it in the road upon his cart, as he unquestionably had a right to do, the horse might have been frightened at it, and if injury had resulted to the plaintiff from this cause alone, without any defect in the highway having conduced to it, then of course neither the town nor the individual would be in fault, and the plaintiff must have suffered her injury without remedy. So the owner of the wood being the owner of the land on which it lay, and that being adjacent to the highway, had a right to use the land in the limits of the highway in any proper manner which did not interfere with the use of the way by the public, or interfere with the rights of the public in the way. The public have the right to have the way kept reasonably safe for the public travel, so far as defects in the traveled track are concerned, and so far as railings are needed to protect the public from dangerous places and precipices. And we think they have also the right to require that whoever uses the limits of the highway for any purpose should make such reasonable use of it as not unnecessarily to place objects there calculated to frighten horses.

If by throwing. the wood into the highway it became liable to frighten horses, it may have been the duty of the owner to have drawn his cart or sled up to the fence within the limits of the highway, and thrown the wood over upon the cart or sled, and thus have removed it without leaving it by the side of the road at all. The jury may have found that no such use of the road was necessary, and that the owner could have entered upon his own land with his team and removed the wood without throwing it into the highway at all. But if the jury found that the owner of the wood and of the land was making such use of this portion of the highway as was necessary and proper under all the circumstances of the case, then neither the town nor the owner of the wood could have been liable, even though the horse of the plaintiff was frightened at it, provided the injury had been produced without any other defect in the highway. This doctrine is fully sustained by *Graves* v. *Shattuck*, 35 N. H. 257.

This point is in fact yielded by the plaintiff's counsel in their argument. They say " If the use of the road by the owner was ' necessary and proper,' the wood could not have been considered an obstruction. On the other hand if the jury regarded the wood as an obstruction, they could not have considered the use of the road by the owner of the soil as necessary and proper." They claim that the instructions which were given were sufficient, and cover the whole ground ; and that it would have been superfluous to have given those requested. If the case were silent upon the subject, it might perhaps be presumed that the instructions given were sufficient, and that when they were given they were explained by the use of language like that contained in the instructions desired.

But when the case finds that these instructions, which it is admitted were proper and necessary by way of explanation of those that were given, were asked for and denied,

and it does not appear that any explanation was given, or if so what, instead of that desired, we must hold that the instructions which were given, though proper in themselves, yet should have been accompanied by those desired by the defendant by way of explanation of those that were given.

We have not here considered whether the fact that the wood was only being thrown into the highway where the horse took fright, if such was the fact, or that it had remained there a longer or a shorter time, would have any effect, and if any, what, upon the liability of the town. The rule as stated by the court that towns are liable in the first instance for injuries thus received through the fault of others in causing the obstructions, is correct in ordinary cases of this kind.

In accordance with these views, the verdict must be set aside and a

*New trial granted.*